*398 OPINION.
Teussell :
A study of the language of the award of contract discloses that the petitioner was to receive for the construction of the reservoir a fixed and definite amount as compensation, and (hat amount was $194,158.01. It further discloses that the work of building the embankments was to be done on the basis of the cost plus 15 per cent but not to exceed a total amount of $51,896. It thus appears that the contractual relations entered into between the petitioner and the Board of Water Commissioners contemplated the performance of one piece of work for a fixed and determined amount, and the performance of another piece of work upon an entirely different basis— cost plus 15 per cent, but limited to the maximum figure stated.
The record establishes that the advances made by the Board of Water Commissioners from time to time were computed upon 85 peí-cent of the proportion of the work of the two separate classes as reported completed.
Ruling Case Law, vol. 6, Contracts, sec. 246, relating to entire and severable contracts, among other things, sa,js:
Where an agreement embraces a number of distinct subjects, which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed. If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied under the law, such a contract will generally be held to be severable.
This doctrine of entire and severable contracts has frequently had the attention of the Supreme Court of Minnesota, in which State the petitioner has its domicile. In the case of McGrath v. Cannon, 55 Minn. 457; 57 N. W. 150, the court, among other things, said:
Whether a contract is entire or severable, like most questions of construction, depends on the intention of the parties, and must be determined in each case by considering the language employed and the subject-matter of the contract, and how the parties themselves treated it. One of the best statements of the law on the subject, and one often cited by the courts with approval, as that in 2 Pars. Oont. 648, which is: “ If the part to be performed by one *399 party consists of several distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will generally be held to be severable.” As complete and legally accurate a statement of the rule as anywhere to be found is that of Mr. Justice Field in Norris v. Harris, 15 Cal. 226, viz: “ A contract made at the same time, for different articles, at different prices, is not an entire contract, unless the taking of the whole is essential from the character of the property, or is made so by the agreement of the parties, or unless it is of such a nature that a failure to obtain a part of the articles would materially affect the object of the contract, and thus have influenced the sale had such a failure been anticipated.”
This case has been cited and its reasoning followed by the same court in Stauff v. Bingenheimer, 94 Minn. 309; 102 N. W. 694; Mulcahy v. Dieudonne, 103 Minn. 352; 115 N. W. 636; Duluth Log Co. v. Hill Lumber Co., 110 Minn., 124; 124 N. W. 967; Blake v. Neils Lumber Co., 111 Minn. 513; 127 N. W. 450.
The record of this case conclusively establishes that the petitioner considered and treated its contractual relations with the Board of Water Commissioners of St. Paul as two separate and distinct contracts, and from the language used in the form of award of contract approved by the Board of Water Commissioners and also the language used in the supplemental material and supplies contract it seems to be plain that the Board of Water Commissioners regarded and treated the same contractual relations as being two separate and distinct agreements. The construction of the reservoir itself was to be performed and paid for at a fixed and stipulated amount of $194,158.01, while the construction and work of filling the earth embankments is separated from the construction of the reservoir and is to be paid for on an entirely different basis of cost plus 15 per cent, although limited to a figure of maximum cost to the Board of Water Commissioners.
We are, therefore, of the opinion that, when the petitioner entered into the contractual relations respecting the construction of the reservoir and the filling of the earth embankments, it undertook the performance of two severable and separate agreements, and that it properly kept its accounts on the basis of two separate contracts and is entitled to deduct the loss on the reservoir contract from its gross income in the year ended March 31, 1919, and to deduct its loss on the earth-embankments contract in the year ended March 31, 1920.
A redetermination of the deficiency in accordance with the foregoing findings of fact and opinion will be made upon 15 days’ notice, pursuant to Rule 50, and judgment will be entered accordingly.